UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AYOTUNJI AKINLAWON,

                              Plaintiff,

       v.

NOLE J. POLONCO, *et al.*,

                              Defendants.

---

No. 21-CV-2621 (KMK)

OPINION & ORDER

Appearances:

Ayotunji Akinlawon
Attica, NY
*Pro Se Plaintiff*

Jeb Harben, Esq.
Wesley E. Bauman, Esq.
Office of the New York Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

       Ayotunji Akinlawon ("Plaintiff") proceeding pro se, brings this Action against Sgt. E.J. Polonco ("Polonco"), Corrections Officer ("C.O.") A.J. Colombos ("Colombos"), C.O. Baggot ("Baggot"), C.O. Roderick A. Robinson ("Robinson"), C.O. Matthews ("Matthews"), Sgt. McCray ("McCray"), C.O. Santiago ("Santiago"), Lt. Anspach ("Anspach"), Lt. Ciorciari ("Ciorciari"), C.O. Hulsair ("Hulsair"), Superintendent Russo ("Russo"), First Deputy Johnson ("Johnson"), C.O. Everly ("Everly"), C.O. Morel ("Morel"), Sgt. Gunset ("Gunset"), Sgt. Rossy ("Rossy"), C.O. Gleason ("Gleason"), Capt. Bey ("Bey"), C.O. Rodriguez ("Rodriguez"), and Sgt. DeCicco ("DeCicco"), and former Department of Corrections and Community Supervision ("DOCCS") Chief Medical Officer Dr. John Morley ("Morley") (collectively, "Defendants"),

pursuant to 42 U.S.C. § 1983, alleging that Defendants, both in their official capacities and individually, violated his rights under the First, Fourth, Fifth, and Eighth Amendments. (*See* Compl. (Dkt. No. 2).)[1]  Before the Court is Defendant Robinson's Partial Motion to Dismiss the Complaint and Defendant Morley's Motion to Dismiss the Complaint in full pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (the "Motion").  (*See* Not. of Mot. (Dkt. No. 160).)  Also before the Court is Plaintiff's Motion for Appointment of Counsel ("Plaintiff's Application").  (*See* Dkt. No. 152.)  For the following reasons, Defendants Robinson and Morley's Motion is granted in part and denied in part and Plaintiff's Application is granted.

I.  Background

A.  Factual Background

Based upon information provided by Plaintiff after the filing of the Complaint, Defendants identified the individual originally referenced as "John Doe/Jane Doe # 1" in the Complaint in this Action as Dr. John Morley.  (*See* Dkt. No. 119; Dkt. No. 64 at 91 (medical report naming Morley).)  On February 21, 2024, in the interests of efficiency and in light of plaintiff's pro se status, Magistrate Judge Krause deemed Plaintiff to have made an oral motion to amend the Complaint to substitute Morley for "John Doe/Jane Doe # 1" in the caption and at pages 4, 18, 21, and 24, and granted said motion.  (*See* Dkt. No. 121.)[2]

---

[1] Because Plaintiff's Complaint was amended only insofar as it now identifies John Doe #1 as Dr. John Morley, and because no amended complaint was filed, as such amendment was made orally, (*see* Infra Section I.A), the Court still refers to the operative document as the "Complaint" rather than the "Amended Complaint."

The Complaint also originally listed as Defendants Acting Director of DOCCS Anthony Annucci and C.O. Young, (*see* Compl. 4), who were subsequently dismissed, (*see* Dkt. No. 84 at 31).

[2] This Action previously was referred to Judge Krause for general pre-trial supervision. (*See* Order of Reference (Dkt. No. 91).)

Because there are no other amendments to Plaintiff's Complaint other than those described above, and because the factual background of this Action has been summarized in this Court's previous Opinion & Order on Defendants' First Motion to Dismiss the Complaint (the "2023 Opinion" and the "First Motion," respectively), the Court assumes familiarity with the general issues in dispute.  (*See* 2023 Opinion (Dkt. No. 84).)[3]  The Court thus re-summarizes only the factual allegations directly relevant to the instant Motion.  The following facts are taken from Plaintiff's Complaint, as well as Plaintiff's opposition papers and other filings, and are assumed to be true for the purposes of ruling on the instant Motion.[4]  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

At all times relevant to the instant Action, Plaintiff was an inmate of Green Haven Correctional Facility ("Green Haven"), located in Stormville, NY.  (*See* Compl. 1, 7.)  All Defendants appear to be officers, supervisors, or medical personnel employed by Green Haven. (*See id*. at 1–5.)

---

[3] This Opinion is published as *Akinlawon v. Polanco*, No. 21-CV-2621, 2023 WL 6216724 (S.D.N.Y. Sept. 25, 2023).

[4] Generally, "[w]hen considering a motion to dismiss, the Court's review is confined to the pleadings themselves" because "[t]o go beyond the allegations in the Complaint would convert the Rule 12(b)(6) motion into one for summary judgment pursuant to [Rule] 56." *Thomas v. Westchester Cnty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002); *accord Doe v. County of Rockland*, No. 21-CV-6751, 2023 WL 6199735, at *1 (S.D.N.Y. Sept. 22, 2023).  However, the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials, such as [the] opposition memorandum," *Williams v. Barometre*, No. 20-CV-7644, 2022 WL 903068, at *2 n.4 (S.D.N.Y. Mar. 28, 2022) (quotation marks and citation omitted), "to the extent that those allegations are consistent with the [Complaint]," *Veras v. Jacobson*, No. 18-CV-6724, 2020 WL 5659551, at *1 n.1 (S.D.N.Y. Sept. 23, 2020); *see also Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *3 (S.D.N.Y. May 9, 2022) (considering exhibits attached to pro se opposition memorandum).

On July 28, 2020, Colombos and Robinson stood in front of Plaintiff's cell and had Baggot open the cell. (*Id.* at 10.) Colombos said, "your time has expired." (*Id.*) Colombos then forced Plaintiff to perform oral sex on him and Plaintiff threw up. (*Id.*) Colombos also inserted his penis into Plaintiff's rectum. (*Id.*) Robinson held the gate open for Colombos as he left Plaintiff's cell and then closed the gate. (*Id.*) Plaintiff later reported to another defendant (Baggot), that he had been raped by Colombos. (*Id.*) Baggot said, "I know[,] I[']m the one who opened your cell for him to do it[.] Now pass the ice out and act like it didn't happen or we will kill you." (*Id.*)

After Plaintiff "passed the ice[,]" Baggot came back to his cell and said "Listen[,] what they did was wrong but I can[']t go against them[.] . . . [T]hey gave me orders not to let you out of your cell tonight so you don't blow up the incident . . . ." (*Id.*) After Plaintiff then had an anxiety attack with chest pain, another inmate ran and got Baggot, who said she was calling medical because she did not want Plaintiff to die while she was on duty with Colombos's DNA in his body. (*See id.* at 10–11.)

At medical, after "he waited for maybe at least an hour" to be seen, (*see* Pl's App'x to Sept. 10, 2024 Ltr. at 1 ("Pl's Opp'n") (Dkt. No. 165-1)), Plaintiff reported that he had been raped and asked to be tested for STDs, including HIV, and for a rape kit to be collected, (*see* Compl. at 11, 18). Although the medical staff did not get Plaintiff tested or perform a rape kit, (*id.* at 18), Plaintiff was informed that he was "set to go to Westchester"—an outside medical facility—(*see id.* at 11), "to be tested and [have] a rape kit conducted," (Pl's Opp'n 1). Shortly thereafter, however, Ciorciari "stormed" into medical and informed Plaintiff he was "not going anywhere but back to [his] cell," (Compl. 11), because "they [defendants] protect each other," so Plaintiff "wasn't going to get the medical needed," (Pl's Opp'n 2). Plaintiff's trip to Westchester

4

was then cancelled (i.e., "D/C or discontinue[ed]"), (*id.* at 2–3), "per Lt. Corcere [sic] by Dep. Comm. Morley," (Defs' Mem., Ex. A ("Ex. A") (Dkt. No. 162-1)).[5]  The medical personnel who saw Plaintiff allegedly said "he had no idea . . . why [plaintiff] [couldn't] get medical" treatment or why the trip was cancelled.  (*See* Pl's Opp'n 1.)[6]

  Plaintiff was sent back to his cell and started to have suicidal thoughts "as a result of Dr. Morley['s] actions denying [him] medical treatment."  (Pl's Opp'n 2; *see also* Compl. 11.) Plaintiff then proceeded to swallow metal as two corrections officers (Polonco and Gleason) watched.  (Compl. 11; *see also* Pl's Opp'n 2.)  Plaintiff was then sent to suicide watch where he threw up blood, which resulted in medical being called.  (Compl. 11.)  Plaintiff was taken to the infirmary, and Polonco then came in and told the staff not to send Plaintiff out of Green Haven. (*Id.*; *see also* Pl's Opp'n 2 (stating he was "again denied to go to an outside hospital despite the

---

[5] Defendants' Exhibit A—Plaintiff's Green Haven medical report from July 28, 2020—was originally filed by Plaintiff in response to Defendants' First Motion.  (*See* Dkt. No. 64 at 1, 91.)  Because this document was referenced and relied upon by Plaintiff in his Opposition, and because there is no dispute over its authenticity, the Court will consider the Exhibit and accompanying papers.  *See Stewart v. Riviana Foods Inc.*, No. 16-CV-6157, 2017 WL 4045952, at *6 (S.D.N.Y. Sept. 11, 2017) ("Generally, a court may incorporate documents referenced where (1) [the] plaintiff relies on the materials in framing the complaint, (2) the complaint clearly and substantially references the documents, and (3) the document's authenticity or accuracy is undisputed." (emphasis omitted)); *see also Williams*, 2022 WL 903068, at *2 n.4 (noting the Court's "mandate to read the papers of pro se litigants generously makes it appropriate to consider [a] plaintiff's additional materials").

[6] It is somewhat unclear from the Complaint and Plaintiff's Opposition whether the person originally identified as "John Doe #1" is, in fact, Morley.  As the Court reads the allegations in Plaintiff's Opposition, Plaintiff was first seen by a nurse (originally identified in the Complaint as "John Doe #1/Jane Doe #1", (*see* Compl. 11)), but Plaintiff's trip was ultimately cancelled by Morley, who "worked in Albany" but "was probably at home . . . when he got the call from Lt. [Corciere] because the time was after 7PM," (Pl's Opp'n 1–2).  Thus, although Judge Krause deemed Plaintiff's oral motion to amend the Complaint as substituting Morley for "John Doe #1" at all instances, (*see* Supra Section I.A), the Court concludes the allegations most logically read as naming two medical personnel: (1) the still unidentified nurse; and (2) Morley.

fact [he] was throwing up blood").)  Plaintiff was sent back to "the cell[,]" and two days later was still throwing up blood.  (Compl. 11.)  After informing mental health and receiving an x-ray that showed metal, Plaintiff was finally sent to an outside hospital.  (*Id.*)  Plaintiff alleges he was not initially sent to an outside hospital for his suicide attempt because "DNA stays for up to 72 hours and if they had sent me to outside hospital for that (swallowing metal) I could have requested a rape kit."  (Pl's Opp'n 2.)

As a result of the actions described above, as well as the other conduct detailed in the Complaint, (*see generally* Compl; 2023 Op. 5–19), Plaintiff alleges he has sustained mental and emotional stress, paranoia, headaches, bleeding from his rectum, and throwing up blood, (Compl. 18).

B.  Procedural History

The Court discussed the procedural background of this Action in the 2023 Opinion and in a prior Order.  (*See* 2023 Op. 20; Dkt. No. 66.)  The Court discusses subsequent proceedings only as relevant to deciding the instant Motion and Application.

After the entry of the 2023 Opinion, the Parties began engaging in limited discovery. Following a December 18, 2023, status conference in front of Judge Krause, Judge Krause ordered Defendants to inform the Court whether they had been able to identify C.O. Robinson, who was not identified or served prior to Defendants' First Motion, or John Doe #1/Jane Doe #1. (*See* Dkt. No. 104.)  On February 8, 2024, Defendants filed a letter identifying C.O. Roderick A. Robinson as the "C.O. Robinson" named in the Complaint.  (*See* Dkt. No. 112.)  The following day, Plaintiff provided information at a status conference before Judge Krause that allowed Defendants to identify the individual referenced as "John Doe #1/Jane Doe #1" as Morley.  (*See* Dkt. No. 121.)  Shortly thereafter, Judge Krause ordered the U.S. Marshals Service to effect service on Robinson and Morley.  (*See* Dkt. No. 122.)

6

On May 28, 2024, Defendants Robinson and Morley (the "Moving Defendants") submitted a letter requesting leave to file a Motion to Dismiss the Complaint. (*See* Dkt. No. 147.) The Court set a briefing schedule, (*see* Dkt. No. 149), pursuant to which Moving Defendants submitted their Motion on July 1, 2024, (*see* Not. of Mot.; Not. of Not. to Pro Se Litigant (Dkt. No. 161); Mem. of Law in Supp. of Mot. ("Defs' Mem.") (Dkt. No. 162)). On September 10, 2024, after realizing he forgot to send in his Opposition to Moving Defendants' Motion, Plaintiff filed a letter providing the Court with the two pages from his Opposition that he was able to locate. (*See* Sept. 10, 2024 Ltr. from Pl. (Dkt. No. 165); Pl's Opp'n.) Moving Defendants did not reply.

Separately, on December 13, 2023, Plaintiff filed an application requesting that the Court appoint pro bono counsel. (*See* Dkt. No. 98.) The Court denied Plaintiff's application without prejudice. (*See* Dkt. No. 103.)[7] Plaintiff filed a renewed Application on July 1, 2024. (*See* Pl's App.)

## II.  Discussion

### A.  Defendants' Motion to Dismiss

#### 1.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of [its] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."

---

[7] This Order is published as *Akinlawon v. Polonco*, No. 21-CV-2621, 2023 WL 8772672 (S.D.N.Y. Dec. 19, 2023).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (alteration and quotation marks omitted). Instead, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id*.; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2))); *id*. at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial

notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (citation and quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same). However, as noted, when the complaint is from a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [the plaintiff's] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citation omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (citation and quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and citation omitted)).

2. <u>Analysis</u>

Plaintiff asserts multiple causes of action in his Complaint, including, as mostly relevant here, "Eighth Amendment cruel and unusual punishment." (*See* Compl. 18.) The Court construes Plaintiff's claims against Robinson and Morley as follows: a failure to intervene claim against Robinson for failing to prevent or halt Colombos's July 28, 2020 sexual assault of Plaintiff; and a deliberate indifference to medical needs claim against Morley for denying Plaintiff's request for STD testing and collection of a rape kit.[8] (*See* Compl. 18; Pl's Opp'n 1–2.)

a) <u>Eighth Amendment Claim: Morley</u>

Plaintiff alleges that Morley was deliberately indifferent to his medical needs, in violation of the Eighth Amendment, by failing to provide him with adequate medical treatment following his alleged assault on July 28, 2020. (Compl. 11, 18; Pl's Opp'n 1–2.) Moving Defendants argue that Plaintiff has failed to allege Morley's personal involvement or successfully plead a deliberate indifference claim. (Defs' Mem. 4–7.) The Court addresses Moving Defendants' arguments as necessary to resolve the instant Motion.

i. <u>Personal Involvement</u>

Moving Defendants argue that Plaintiff has failed to allege "Dr. Morley's personal involvement in any constitutional violation." (Defs' Mem. 4.) The Court disagrees.

As an initial matter, "[i]t is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show. . . the defendant's personal involvement in the alleged constitutional deprivation." *Whitley v. Ort*, No. 17-CV-3652, 2018

---

[8] In the 2023 Opinion, these claims were referred to as Claim 14 and Claim 16, respectively. (*See* 2023 Op. 18.)

WL 4684144, at *5 (S.D.N.Y. Sept. 28, 2018) (quoting *Grullon v. City of New Haven*, 720 F.3d

133, 138 (2d Cir. 2013)).  To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which
> unconstitutional practices occurred, or allowed the continuance of such a policy or
> custom, (4) the defendant was grossly negligent in supervising subordinates who
> committed the wrongful acts, or (5) the defendant exhibited deliberate indifference
> to the rights of inmates by failing to act on information indicating that
> unconstitutional acts were occurring.

*Id.* (quoting *Grullon*, 720 F.3d at 139).  In other words, "[b]ecause vicarious liability is

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at

676.  Therefore, Plaintiff must plausibly allege that Morley's actions fall into one of the five

categories identified above.  *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4

(S.D.N.Y. Jan. 24, 2017) (holding that the five categories "still control[] with respect to claims

that do not require a showing of discriminatory intent" post-*Iqbal* ).

Plaintiff alleges that he did not receive STD testing or a rape kit at Green Haven, but that

unnamed medical staff arranged for him to go to an outside facility to receive such treatment.

(Compl. 11, 18; Pl's Opp'n 1–2.)  Before Plaintiff was transferred, however, Morley allegedly

canceled (or "discontinued") the transfer "to prevent evidence from being found" so that the

corrections officer who allegedly assaulted Plaintiff "didn't get busted."  (Pl's Opp'n 1–2;

Compl. 11, 18; Ex. A ("Trip D/C per Lt. Corcere [sic] by Dep Comm Morley").)  Given that

Plaintiff has alleged that Morley was directly responsible for cancelling his trip to an outside

facility to receive the necessary medical care, the Court finds these allegations are sufficient to

allege Morley's personal involvement in denying Plaintiff STD testing or a rape kit.  *See*

*Whitley*, 2018 WL 4684144, at *7 (finding a nurse was personally involved in plaintiff's

deliberate indifference claim when she "allegedly never provided [the sexually assaulted plaintiff] any medical treatment or alerted PREA, because unnamed Correction Officers pressured her to keep quiet"); *Grullon*, 720 F.3d at 139 (listing as categories of personal involvement when a defendant "participated directly in the alleged constitutional violation" or "exhibited deliberate indifference . . . by failing to act on information indicating" a health risk to the plaintiff (emphasis omitted)); *cf. Lara-Grimaldi v. County of Putnam*, No. 17-CV-622, 2018 WL 1626348, at *11 (S.D.N.Y. Mar. 29, 2018) (dismissing claim for lack of personal involvement because "[t]he [c]omplaint contain[ed] no allegations whatsoever that [the defendant] was involved in, aware of, or somehow permitted [the plaintiff] to be placed on 'routine' supervision" rather than suicide watch).[9]

### ii.    Deliberate Indifference

To state a claim of deliberate indifference, a plaintiff must first "show that, while he was incarcerated, he suffered from a medical condition that is, 'in objective terms, sufficiently serious.'"  *Mallet v. New York State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 132 (2d Cir. 2025) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)); *see Norman v.*

---

[9] Moving Defendants' arguments to the contrary are unavailing.  First, Moving Defendants argue, without support, that it was "virtually implausible" that Morley "personally made the decision to cancel a scheduled trip to an outside provider on the same day Plaintiff claims he was assaulted, . . . given [Morley's] status as DOCCS Chief Medical Officer."  (Defs' Mem. 4.)  At this stage, however, the Court is bound to accept the allegations in the Complaint as true and draw all reasonable inferences in Plaintiff's favor, *see Daniel*, 992 F. Supp. 2d at 304 n.1, and Plaintiff clearly alleges that Morley is the one who cancelled the trip, (*see* Pl's Opp'n 1–2).

Second, Moving Defendants argue that "having STD and rape testing done at an outside facility is hardly constitutionally mandated as Plaintiff's facility has medical providers as well," and thus, presumably, Morley's actions could not have implicated a constitutional wrong.  (*See* Defs' Mem. 4.)  But Moving Defendants misinterpret Plaintiff's claim.  Plaintiff's deliberate-indifference claim is not based upon the fact that he did not receive STD testing or a rape kit at an outside facility—it is that he did not receive such treatment at *all*, either at Green Haven *or* at Westchester.  (*See* Compl. 11, 18; Pl's Opp'n 1–2.)  Thus, Morley's alleged role in cancelling such treatment qualifies as personal involvement for the purposes of this Motion.

*Mount Vernon Hosp.*, No. 17-CV-9174, 2020 WL 4432063, at *7 (S.D.N.Y. July 31, 2020) ("Plaintiff must [first] plausibly allege [] that he suffered a sufficiently serious constitutional deprivation." (internal quotation marks omitted)).  Second, the plaintiff must plausibly allege that the defendant "acted with deliberate indifference."  *Norman*, 2020 WL 4432063, at *7; *Whitley*, 2018 WL 4684144, at *5.

      "The standard of deliberate indifference includes both subjective and objective components."  *Mallet*, 126 F.4th at 132 (quoting *Chance*, 143 F.3d at 702).  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious."  *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (citation and quotation marks omitted).  In other words, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."  *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citations omitted).  Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006), *abrogated on other grounds as recognized by Kravitz v. Purcell*, 87 F.4th 111, 119, 122 (2d Cir. 2023), and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the [C]ourt to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner," *id.* at 280 (citation omitted).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition."  *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has suggested the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,'

13

(2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" *Id.* (quoting *Chance*, 143 F.3d at 702); *see also Mallet*, 126 F.4th at 132 (same).

"The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the defendant must "appreciate the risk to which a prisoner was subjected," and have a "subjective awareness of the harmfulness associated with those conditions." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *see also Mallet*, 126 F. 4th at 132 (noting that the "acts or omissions" of the defendant must "evince a conscious disregard of a substantial risk of serious harm" (internal quotation marks and alteration omitted)); *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) ("Deliberate indifference is a mental state equivalent to subjective recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation, footnote, and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Id.* (citation and quotation marks omitted). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (citation and quotation marks omitted).

As to the subjective prong, because Plaintiff has alleged not only that he was denied STD testing or a rape kit—both at Green Haven and at an outside facility—but also that Morley deliberately cancelled Plaintiff's planned transfer to receive such testing in order to protect Colombos, the officer who sexually assaulted him, (Compl. 11; Pl's Opp'n 1–2), the Court assumes that Plaintiff has plausibly alleged Morley's deliberate indifference to his medical

needs, *see Bowman v. Dilworth*, No. 20-CV-756, 2021 WL 2551142, at *8 (D. Conn. June 22, 2021) ("[Plaintiff's] allegation that the [defendants] entirely failed to transport him for medical treatment plausibly demonstrates the [defendants'] conscious disregard of his serious medical needs."); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *9 (S.D.N.Y. Mar. 29, 2016) (finding that, "[i]n alleging that [defendants] recklessly failed to provide [plaintiff] with *any* medical treatment, the Second Amended Complaint puts forth a plausible claim of deliberate indifference" (internal citations, quotation marks, and alterations omitted)); *see Harding v. Kuhlmann*, 588 F. Supp. 1315, 1316 (S.D.N.Y. 1984) ("Deliberate indifference, the second essential element, is properly pleaded by allegations," inter alia, "of 'complete denial' of medical treatment . . . ."), *aff'd*, 762 F.2d 990 (2d Cir. 1985).

Even assuming Plaintiff has plausibly pled deliberate indifference, however, his claim falters on the objective prong—i.e., whether or not his medical condition was sufficiently serious. *See Hilton v. Wright*, 928 F. Supp. 2d 530, 547 (N.D.N.Y. 2013) ("When the alleged deprivation is that the defendant failed to provide *any* treatment for the medical condition, 'courts examine whether the inmate's medical condition is sufficiently serious.'" (emphasis in original) (quoting *Salahuddin*, 467 F.3d at 280)). Although it is well established in the Second Circuit that "certain sexually transmitted infections—such as HIV and Hepatitis C—constitute sufficiently serious conditions that satisfy the objective prong of a deliberate-indifference claim," *see Dumel v. Westchester County*, No. 19-CV-2161, 2021 WL 738365, at *11 (S.D.N.Y. Feb. 25, 2021) (collecting cases), the Court has not located any authority within this Circuit evaluating whether *testing* for sexually transmitted infections after an alleged assault—when it is unknown if such infection exists—itself constitutes a "sufficiently serious" condition for purposes of such claims. Similarly, the Court has not located any authority suggesting that the failure to provide a

rape kit, by itself, is sufficiently serious to state an Eighth Amendment claim. *See Johnson v. Ruiz*, No. 11-CV-542, 2012 WL 90159, at *1, 3 (D. Conn. Jan. 10, 2012) (dismissing a claim for deliberate indifference where plaintiff alleged the corrections facility doctor "informed [the plaintiff] that he would [perform] a rape kit, but failed to do so," because the court concluded there was "no constitutional or statutory requirement that a rape test kit be used on an alleged rape victim" and plaintiff "ha[d] not alleged that [the defendant] otherwise failed to treat him for any physical injuries that he suffered"); *see also Brown v. Parnell*, No. 09-CV-P159, 2010 WL 1418735, at *5 (W.D. Ky. Apr. 7, 2010) (rejecting claim by pre-trial detainee that his Fourteenth Amendment rights were violated by failure of prison authorities to perform rape kit on detainee after he reported being a victim of sexual misconduct).

In the absence of clear guidance, the Court turns to the relevant factors identified by the Second Circuit. As to the first factor, it seems clear that "a reasonable doctor or patient would perceive [Plaintiff's] medical need"—i.e., receiving an STD testing and rape kit after an alleged sexual assault—"as important and worthy of comment or treatment." *Brock*, 315 F.3d at 162 (quotation marks omitted). Indeed, the medical personnel who examined Plaintiff evidently *did* find that STD testing and a rape kit were necessary, hence their initial decision to transfer Plaintiff to an outside facility to receive that care. (*See* Compl. 11; Pl's Opp'n 1–2.) *See also Dumel*, 2021 WL 738365, at *11 (finding an infection to be treatment worthy because the medical personnel involved made a "decision to order medication that would treat the infection").

Examining the second and third factors, however, Plaintiff has neither alleged that the failure to provision such treatment "significantly affect[ed] [a] daily activit[y]," nor that it caused the "existence of chronic and substantial pain." *Brock*, 315 F.3d at 162. Plaintiff does not allege

16

that he did, in fact, develop an STD that then went untreated, or that the failure to provide a rape

kit similarly failed to uncover a condition that caused chronic or substantial pain and affected his

daily activities.[10]   Accordingly, on these allegations alone, as disturbing as they are, the Court

cannot conclude that the refusal to provide STD testing and a rape kit here "implicate[d] a

medical need sufficiently serious to satisfy the [Eighth] Amendment's objective prong."  *See*

*Turner v. Correct Care Sols.*, No. 18-CV-3370, 2019 WL 1115857, at *9 (S.D.N.Y. Mar. 11,

2019); *see also Dumel*, 2021 WL 738365, at *11 (finding allegations that plaintiff's "condition

caused excruciating pain during urination" as well as "among other ailments, swollen and tender

testicles," were sufficient to satisfy the objective prong (internal citations, quotation marks, and

alterations omitted)); *Ruggiero v. County of Orange*, No. 19-CV-3632, 2020 WL 5096032, at

*10 (S.D.N.Y. Aug. 28, 2020) (finding plaintiff "plausibly plead[] his condition was sufficiently

---

[10] Read generously, Plaintiff also alleges that the decision to not provide him with testing
and a rape kit is what lead to his suicidal thoughts and "swallow[ing] metal," which then was
*also* not treated in a timely fashion because Defendants did not want him to receive a rape kit
shortly after the alleged assault.  (*See* Compl. 11–12, 18; Pl's Opp'n 2.)  However, even
assuming the denial of treatment directly led to the suicidal thoughts and swallowing metal,
Plaintiff faces other hurdles.  First, the Complaint and Opposition are devoid of any allegations
that Morley was personally involved in—or even aware of—the delay in care after Plaintiff
swallowed metal.  *See Whitley*, 2018 WL 4684144, at *6 (dismissing a deliberate-indifference
claim against a defendant because "[p]laintiff does not allege [the defendant] was present for, let
alone participated directly or somehow permitted, the violation of [p]laintiff's constitutional
rights by denying him medical attention"); *Casiano v. County of Nassau*, No. 16-CV-1194, 2017
WL 4484338, at *4 (E.D.N.Y. Sept. 30, 2017) (dismissing a deliberate-indifference claim for
lack of personal involvement because the "[p]laintiff d[id] not allege facts that support an
inference that [the defendant] had actual knowledge of the [d]ecedent's specific medical
condition, such as allegations that the [d]ecedent directly spoke to [the defendant]").  Second, to
demonstrate deliberate indifference, Plaintiff must plead that Morley "appreciate[d] the risk to
which [Plaintiff] was subjected," *Darnell*, 849 F.3d at 35, and "conscious[ly] disregard . . . a
substantial risk of serious harm," *Mallet*, 126 F.4th at 132.  Plaintiff's allegations are insufficient
to establish that Morley was aware of any risk of suicidal behavior resulting from the deprivation
of care, let alone that he consciously disregarded it.  *See Chance*, 143 F.3d at 702 ("[T]he official
must both be aware of facts from which the inference could be drawn that a substantial risk of
serious harm exists, and he must also draw the inference.").

serious" when he was denied a request for a rape kit because he also "allege[d] he had bruises and hand marks on his testicles and penis for weeks").[11]  Thus, Plaintiff has not successfully pled a deliberate-indifference claim against Morley.[12]

> b.  Corrections Law § 24: Morley and Robinson

Moving Defendants next argue that, as to Morley and Robinson, "[t]o the extent state law claims can be read into the pleadings, they are barred by New York Corrections Law § 24, which provides immunity for DOCCS employees from lawsuits based on acts or omissions within the course of their employment."  (Defs' Mem. 8–9 (internal quotation marks omitted).)  But Moving Defendants do not explain which state law claims may be read into the pleading, nor engage with why such claims are barred by immunity for DOCCS employees other than quoting one piece of generic caselaw and stating that, " [d]uring the alleged events in question, it is undisputed that Defendants were employed by DOCCS."  (*Id.* (citing *Parris v. New York State Dept. Corr. Servs.*, 947 F. Supp. 2d 354, 365 (S.D.N.Y. 2013)).)  The Court declines to consider these arguments "because [they are] 'not sufficiently argued' by Defendants, who are represented by counsel and attempting to dismiss a pro se Complaint."  *Whitley v. Bowden*,

---

[11] To be clear, the Court is not stating that the refusal to provide STD testing and/or a rape kit can *never* be sufficiently serious enough to plead a deliberate-indifference claim. Instead, the Court only finds that the allegations currently before it are insufficient to state such a claim.

[12] Moving Defendants argue that the reason Plaintiff's alleged condition was not sufficiently serious to plead a claim is that his allegations are that his treatment was delayed, or "amount only to a disagreement over the treatment he received."  (Defs' Mem. 5–6.)  Again, Moving Defendants mischaracterize Plaintiff's claim, which is not that he received different care than he wanted or received *delayed* care, it is that he received no care at all.  (*See* Supra n.9.)

Moreover, although Moving Defendants assert that "the documents in question show that Plaintiff *did* receive treatment, but at his facility," (Defs' Mem. at 6 (emphasis added)), the documents Plaintiff submitted do not demonstrate that he ever received STD testing or a rape kit, (*see* Ex. A; Dkt. No. 64-1 at 54 (noting, the day after the assault, "HIV testing not to be offered @ this time")).

No. 17-CV-3564, 2018 WL 2170313, at *12 (S.D.N.Y. May 10, 2018) (quoting *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998)); *see also Bonie v. Annucci*, No. 20-CV-640, 2023 WL 2711349, at *17 (S.D.N.Y. Mar. 30, 2023) (declining to consider defendant's argument for dismissal of pro se plaintiff's claim of first amendment retaliation where it amounted to "a single three sentence paragraph" that failed to substantively engage with Plaintiff's factual averments); *cf. Sioson v. Knights of Columbus*, 303 F.3d 458, 460 (2d Cir. 2002) ("Perhaps counsel for [the] [a]ppellant intends that we form an argument for him, by looking into the record to document the 'facts' posited in his 'statement of the case,' and then examining various combinations of these facts in the light of the legal doctrines he later mentions.  But that is simply not our job, at least in a counseled case.").

c.  Official Capacity Claims: Morley and Robinson

Moving Defendants next assert that "[a]ll defendants are sued in their official capacities" and "[s]uch claims for money damages are barred."  (Defs' Mem. 8 (citations omitted).) Although those bareboned statements are the sum total of Moving Defendants' arguments on this topic, the Court considered this exact issue in the 2023 Opinion and concluded that the claims asserted against all Defendants in their official capacity were barred by the Eleventh Amendment.  (*See* 2023 Op. 40–41 (holding that, because "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state, [t]he Eleventh Amendment therefore also bars the claims for damages against the individual Defendants in their official capacities" (internal quotation marks and citation omitted)).)  The Court concludes the same holding applies here and, accordingly, any claims asserted against Morley and Robinson in their official capacities are dismissed.  *See Samuels v. New York Dep't of Lab.*, No. 23-CV-8004, 2025 WL 27737, at *4 (S.D.N.Y. Jan. 3, 2025) (dismissing claims for damages asserted against individual

defendants in their official capacities as "barred by Eleventh Amendment immunity"); *Gonzalez v. New York City Dep't of Corr.*, No. 24-CV-3859, 2024 WL 4791589, at *3 (S.D.N.Y. Nov. 14, 2024) (same); *Wade v. Rodriguez*, No. 23-CV-4707, 2024 WL 4135195, at *4 (S.D.N.Y. Sept. 10, 2024) (same).

    d.  <u>Declaration of Unconstitutional Conduct and Injunctive Relief: Morley and Robinson</u>

Finally, Moving Defendants argue that any claims for injunctive relief were mooted by Plaintiff's transfer to a different correctional facility and, further, that Plaintiff cannot seek a declaratory judgment as to Morley and Robinson's past conduct. (*See* Defs' Mem. 8–9.) The Court agrees.

"A case is deemed moot where the problem sought to be remedied has ceased or where there 'is no reasonable expectation that the wrong will be repeated.'" *Keitt v. New York City,* 882 F. Supp. 2d 412, 449 (S.D.N.Y. 2011) (quoting *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996)). Accordingly, as the Court noted in its 2023 Opinion, (2023 Op. 42), "[i]t is settled in th[e] [Second] Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility," *Prins*, 76 F.3d at 506; *see also Booker v. Graham*, 974 F.3d 101, 104 (2d Cir. 2020) (holding that plaintiff's "claims for injunctive and declaratory relief are moot because he has been transferred to a different facility"); *Salahuddin*, 467 F.3d at 272 ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.").

Thus, to the extent Plaintiff asserts claims for injunctive or declaratory relief against Morley and Robinson, those claims are denied as moot. *See Tripathy v. McKoy*, 103 F.4th 106, 113 (2d Cir. 2024) (holding an inmate's "requests for declaratory and injunctive relief . . . were mooted by his release from prison"); *see also Bey v. Megget*, No. 24-CV-1258, 2025 WL 27463,

at *6 (D. Conn. Jan. 3, 2025) (dismissing as moot claims for injunctive relief after inmate was transferred from the facility where defendants worked); *Mitchell v. Martin*, No. 23-CV-902, 2024 WL 2052139, at *3 (D. Conn. May 7, 2024) (dismissing "as moot [plaintiff's] claims for injunctive and declaratory relief" after plaintiff was transferred to a different facility).

~*~*~*~*~

In sum, Moving Defendants' Motion is denied insofar as Moving Defendants seek to assert immunity based on New York Corrections Law § 24, but is granted on all other grounds.

B.  Plaintiff's Application for Appointment of Counsel

Also before the Court is Plaintiff's Application for Appointment of Pro Bono Counsel. Plaintiff asserts that his "imprisonment will greatly limit his ability to litigate" this Action, particularly given his "limited access to the law library and limited knowledge of the law," (Pl's App. 1), and that as the case is in discovery and involves reviewing video footage and investigating hospital records, he "really need[s] help," (Pl's App. at 8–9, Ex. B (Pl's Decl.)).

Although there is not a constitutional right to counsel in civil cases, the Court has the authority to appoint counsel for indigent parties.  *See* 28 U.S.C. § 1915(e)(1).  Yet, "[b]road discretion lies with the district judge in deciding whether to appoint counsel pursuant to this provision."  *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986).  When analyzing whether appointment of counsel is appropriate, the Court should undertake a two-step inquiry.  *See Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 203–04 (2d Cir. 2003).  First, the Court "'should . . . determine whether the indigent's position seems likely to be of substance.'"  *Id.* at 203 (quoting *Hodge*, 802 F.2d at 61); *see also Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) ("This Court considers motions for appointment of counsel by asking first whether the claimant has met a threshold showing of some likelihood of merit." (citation and internal quotation marks omitted)).  In other words, the claim must not be so "highly dubious" that the plaintiff appears to

have no chance of success.  *Hodge*, 802 F.2d at 60 (internal quotation marks omitted).  In making this determination, the Court construes pleadings drafted by pro se litigants liberally and interprets them "to raise the strongest arguments that they suggest."  *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted); *Sommersett v. City of New York*, 679 F. Supp. 2d 468, 472 (S.D.N.Y. 2010) (same).  If the threshold requirement is met, the Court should proceed to consider other prudential factors such as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented [to the fact finder], the indigent's ability to present the case, the complexity of the legal issues and any special reason . . . why appointment of counsel would be more likely to lead to a just determination.

*Ferrelli*, 323 F.3d at 203–04 (quoting *Hodge*, 802 F.2d at 61–62); *see also Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172 (2d Cir. 1989) (listing factors courts should consider, including the litigant's efforts to obtain counsel).

In considering these factors, district courts should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion.  *See Hendricks v. Coughlin*, 114 F.3d 390, 392–93 (2d Cir. 1997).  Rather, "each [application] must be decided on its own facts."  *See Hodge*, 802 F.2d at 61*; see also Norman v. Doe*, No. 17-CV-9174, 2020 WL 6808854, at *1 (S.D.N.Y. Nov. 19, 2020) (same).

For the purpose of addressing Plaintiff's Application, the Court construes Plaintiff's Complaint liberally and assumes it has "some likelihood of merit" such that it satisfies the threshold requirement under *Hodge*.  *Johnston*, 606 F.3d at 41 (quotation marks omitted); *see also Gayot v. New York*, No. 16-CV-8871, 2023 WL 6199226, at *3 (S.D.N.Y. Sept. 22, 2023) (assuming for the purpose of an application for pro bono counsel that the plaintiff's claims had "some likelihood of merit"); *McCray v. Lee*, No. 16-CV-1730, 2020 WL 4229907, at *2

(S.D.N.Y. July 23, 2020) (same); *Ahmad v. White Plains City Sch. Dist.*, No. 18-CV-3416, 2020
WL 3972274, at *3 (S.D.N.Y. July 14, 2020) (same); *Simmons v. Diaz*, No. 17-CV-8886, 2018
WL 11258138, at *4 (S.D.N.Y. May 8, 2018) (same).  Indeed, the Court notes that it previously
denied in part Defendants' Motion to Dismiss Plaintiff's Complaint, (*see* 2023 Op.), and further
notes that the Parties are currently engaged in discovery on Plaintiff's surviving claims, (*see*
*generally* Dkt.).

　　"[T]he Second Circuit has interpreted [28 U.S.C. § 1915(e)(1)] to require that the plaintiff
be unable to obtain counsel 'before appointment will even be considered.'"  *Morris v. Moran*,
No. 12-CV-7020, 2014 WL 1053658, at *1 (S.D.N.Y. Mar. 14, 2014) (quoting *Hodge*, 802 F.2d
at 61); *see also Williams v. Nicholson*, No. 12-CV-8300, 2013 WL 1800215, at *2 (S.D.N.Y.
Apr. 22, 2013) ("Where, in a civil action, an applicant fails to make any effort to engage counsel,
appointing counsel for the applicant is not appropriate and should not even be considered . . . .").
The Court denied Plaintiff's prior application partly on the grounds that Plaintiff had not
"explain[ed] whether he ha[d] sought to obtain counsel in this matter at all before asking the
Court to appoint counsel" or "demonstrated that he made any effort to engage counsel."  (*See*
Dkt. No. 103 at 4.)  In the instant Application, however, Plaintiff avers that he has "made
repeated attempts to obtain a lawyer" but has only received a single response (a denial) to his
requests.  (*See* Pl's App. 1–2; Pl's App. at 4, Ex. A (response from the law office of A. Agnew,
Esq.); Pl's App. at 8–9, Pl's Decl.)  The Court finds that these attempts, combined with
Plaintiff's prior application to the Court, demonstrates Plaintiff has made an effort to obtain
counsel, which weighs in his favor here.  *Morris*, 2014 WL 1053658, at *1.

　　The Court similarly finds that the other *Hodge* factors weigh in favor of granting
Plaintiff's Application.  Specifically, as Plaintiff argues in his Motion, Plaintiff's incarceration

will hinder his ability to effectively conduct document discovery and depositions in this matter. (*See* Pl's App. 1–2.)  Thus, in this case, representation would "lead to a quicker and more just result by sharpening the issues and shaping examination."  *Hodge*, 802 F.2d at 61 (citation omitted); *see Flowers v. Sehl*, No. 22-CV-2766, 2023 WL 2436002, at *2 (S.D.N.Y. Feb. 7, 2023) (finding, where the incarcerated plaintiff alleged he was sexually assaulted and that the assault was captured on video, "it would aid the search for the truth if counsel were appointed to assist him with respect to the identified videos, and the discovery process more generally"); *King v. City of New York*, No. 21-CV-6945, 2022 WL 1547854, at *1–2 (S.D.N.Y. Apr. 4, 2022) (finding that appointment of pro bono counsel is warranted because "[p]laintiff intends to conduct depositions of [d]efendants, but is currently incarcerated and facing logistical issues"); *Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, No. 14-CV-7082, 2015 WL 13866414, at *2 (S.D.N.Y. Nov. 2, 2015) (appointing pro bono counsel where "[d]efendant's incarceration will hinder his ability to effectively conduct document discovery and depositions in this matter").

Accordingly, given the stage of the proceedings, the Court will request that counsel appear for the limited purpose of conducting certain document (and video-related) discovery and deposition.  Pro bono counsel may, but is not required to, conduct additional discovery which, in the exercise of his or her good faith judgment, counsel deems necessary.  In addition, pro bono counsel may engage in settlement discussions.  *See Flowers*, 2023 WL 2436002, at *2 (appointing pro bono counsel "for the limited purpose of conducting certain document (and video-related) discovery and deposition[s]" and authorizing pro bono counsel to "conduct additional discovery which . . . counsel deems necessary" and "engage in settlement discussions"); *King*, 2022 WL 1547854, at *1–2 (requesting pro bono counsel "appear for the limited purpose of conducting discovery, specifically conducting depositions," and authorizing

pro bono counsel to "engage in settlement discussions"); *Rattray v. City of New York*, No. 17-CV-8560, 2021 WL 2291076, at *2 (S.D.N.Y. May 14, 2021) (same).

Under the Court's Standing Order regarding the Creation and Administration of the Pro Bono Fund (16-MC-0078), pro bono counsel may apply to the Court for reimbursement of certain out-of-pocket expenses spent in litigating Plaintiff's case. The Pro Bono Fund is especially intended for attorneys for whom pro bono service is a financial hardship. *See* http://www.nysd.circ2.dcn/docs/prose/pro_bono_fund_order.pdf.

Pro bono counsel will not be obligated for any aspect of Plaintiff's representation beyond the matters described in this order. In particular, pro bono counsel will not be required to respond to a dispositive motion. In the event that Defendants file a dispositive motion, pro bono counsel may seek appropriate relief, including an extension of Plaintiff's time to respond, or an expansion of pro bono counsel's role to include responding to the motion. Absent an expansion of the scope of pro bono counsel's representation, pro bono counsel's representation of Plaintiff will end upon completion of discovery. Upon the filing by pro bono counsel of a Notice of Completion, the representation by pro bono counsel of Plaintiff in this matter will terminate, and pro bono counsel will have no further obligations or responsibilities to Plaintiff or to the Court in this matter.

### III.  Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant Robinson and Morley's Motion to Dismiss as to Claims 14 and 16. However, in light of Plaintiff's pro se status, and because this is the first adjudication of these claims on the merits, Plaintiff's Eighth Amendment claims for damages against Robinson and Morley in their individual capacities are dismissed without prejudice. If Plaintiff wishes to file an amended complaint alleging additional facts and otherwise addressing the deficiencies identified above, Plaintiff must do so within 30

days of the date of this Order.  The amended complaint will replace, not supplement, the original

complaint.

Plaintiff's requests for injunctive and declaratory relief are dismissed as moot.  In

addition, Plaintiff's claims against Robinson and Morley in their official capacities are

dismissed.

The Court also grants Plaintiff's Application for Appointment of Pro Bono Counsel.

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to

Plaintiff and terminate the pending Motions.  (*See* Dkt. Nos. 152, 160.)

SO ORDERED.

Dated:    March 21, 2025
          White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge

26